# Exhibit "A"



## Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
_____ County

**FILED**
March 12 2026 12:12 PM
Office of the Prothonotary
Washington County, Pennsylvania
CV-2026-01032

| *For Prothonotary Use Only:* |
| --- |
| Docket No: |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
☒ Complaint          ☐ Writ of Summons          ☐ Petition
☐ Transfer from Another Jurisdiction          ☐ Declaration of Taking

| Lead Plaintiff's Name: WILLIAM T. GOBLESKY | Lead Defendant's Name: PHH MORTGAGE SERVICES |
| --- | --- |
| **Are money damages requested?** ☒ Yes  ☐ No | Dollar Amount Requested: (check one)  ☐ within arbitration limits  ☒ outside arbitration limits |
| Is this a *Class Action Suit?*  ☐ Yes  ☒ No | Is this an *MDJ Appeal?*  ☐ Yes  ☒ No |

Name of Plaintiff/Appellant's Attorney:  LUKAS B. GATTEN, ESQ.

☐  Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
☒ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☐ Other: _____

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other: _____

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other
_____
☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other
_____
☐ Other: _____

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other
_____
☐ Zoning Board
☐ Other: _____

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other: _____

*Updated 1/1/2011*

**IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

WILLIAM T GOBLESKY and

JOSEPH M. GOBLESKY,

        Plaintiffs,

        vs.

PHH MORTGAGE SERVICES,
LIBERTY REVERSE MORTGAGE
f/k/a LIBERTY HOME EQUITY
SOLUTIONS INC. and NATIONAL
FIELD REPRESENTATIVES INC,

        Defendants.

**CIVIL DIVISION**

Docket No. CV 2026- _O1832_

JUDGE _____

TYPE OF PLEADING:

**COMPLAINT**
**Real Estate Involved:**
**152 & 154 Lincoln Street, Cokeburg,**
**Cokeburg Borough, PA 15324**
**200-005-00-03-0007-00 &**
**200-005-00-03-0008-00**

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing complies with
the provision of Public Access Policy of the
Unified Judicial System of Pennsylvania Case
Records of the Appellate and Trial Courts that
require filing confidential information and
documents differently than non-confidential
information and documents.

_Lukas B. Gatten_

Lukas B. Gatten, Esq.

**JURY TRIAL DEMANDED**

FILED ON BEHALF OF:

**WILLIAM T. GOBLESKY and**
**JOSEPH M. GOBLESKY**
**PLAINTIFFS**

COUNSEL OF RECORD:

Lukas B. Gatten, Esquire

PA ID No. 325643
Logan & Gatten Law Offices
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026 (T)
luke@logangattenlaw.com

---

**Logan & Gatten Law Offices**
54 N. Richhill Street
Waynesburg, PA  15370
(724) 627-6026

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

### CIVIL DIVISION

WILLIAM T GOBLESKY and

JOSEPH M. GOBLESKY,

      **Plaintiffs,**               **CIVIL DIVISION**

      vs.

PHH MORTGAGE SERVICES,      Docket No. CV 2026- _01832_
LIBERTY REVERSE MORTGAGE
f/k/a LIBERTY HOME EQUITY
SOLUTIONS INC. and NATIONAL
FIELD REPRESENTATIVES INC,

      **Defendants.**

### NOTICE TO DEFEND & NOTICE TO PLEAD

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. You are hereby notified to Plead to the enclosed COMPLAINT within Twenty (20) Days from service hereof or a default judgment may be entered against you.

      YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

| | | |
|---|---|---|
| Lawyer Referral Service | OR | Summit Legal Aid |
| 119 South College Street | | 10 West Cherry Avenue |
| Washington, PA 15301 | | Washington, PA 15301 |
| (724) 225-6710 | | (724) 225-6170 |

**LOGAN & GATTEN LAW OFFICES**

_Lukas B Gatt_

Lukas B. Gatten, Esq.

DATED: _3-12-2026_

---

Logan & Gatten Law Offices
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

WILLIAM T GOBLESKY and

JOSEPH M. GOBLESKY,

    **Plaintiffs,**             **CIVIL DIVISION**

    **vs.**

PHH MORTGAGE SERVICES,    Docket No. CV 2026- O1832
LIBERTY REVERSE MORTGAGE
f/k/a LIBERTY HOME EQUITY
SOLUTIONS INC. and NATIONAL
FIELD REPRESENTATIVES INC,

    **Defendants.**

## COMPLAINT

AND NOW, comes Plaintiffs, William T. Goblesky and Joseph M. Goblesky, by and through their counsel, Lukas B. Gatten, Esquire, of Logan & Gatten Law Offices, respectfully avers as follows by way of Complaint:

1) Plaintiff William T. Goblesky is an adult individual who currently resides at 152 Lincoln Street, Cokeburg, PA 15324. His mailing address is 907 Main Street, Bentleyville, PA 15314.

2) Plaintiff Joseph M. Goblesky is an adult individual who currently resides at 3 Van Buren Street, Cokeburg, PA 15324.

3) Plaintiffs are brothers and jointly own the real estate located at 152 and 154 Lincoln Street, Cokeburg, PA 15324, Washington County Parcel IDs 200-005-00-03-0007-00 and 200-005-00-03-0008-00, which constitutes a single house that is a duplex.

4) Defendant PHH Mortgage Services aka PHH Mortgage Corporation is a New Jersey Corporation registered as a Pennsylvania Foreign Business Corporation with a principal

address of Midlantic Drive, Suite 410-A, Mount Laurel, NJ 08054. (Defendant shall be referred to in this complaint hereinafter as PHH Mortgage).

5) Defendant PHH Mortgage has a registered office of Corporation Service Company located at 5235 North Front Street, Harrisburg, PA 17110, located in Dauphin County, Pennsylvania.

6) Defendant PHH Mortgage Services upon information and belief also acts and operates under other business names and does business as:

   a. Liberty Reverse Mortgage f/k/a Liberty Home Equity Solutions Inc., and

   b. PHH Mortgage Corporation d/b/a Liberty Reverse Mortgage.

7) Defendant National Field Representatives, Inc. is, upon information and belief, a New Hampshire Corporation with a mailing address of PO Box 1440, Claremont, New Hampshire 03743 and a physical address of 136 Maple Ave., Claremont, New Hampshire 03743. (Hereinafter NFR).

8) National Field Representatives, Inc. is not registered in the Commonwealth of Pennsylvania as a Foreign Business Corporation.

9) According to the National Field Representatives Inc. website, their corporation is "a national utility management services provider who specialized in the transfer, payment processing, certification, and utility research for property owners and lenders across the country."

10) Further, the National Field Representatives Inc. website states under their services "Mortgage Field Services Nationwide – in all 50 states. Recognized by the largest services in the industry as #1 in quality performance. NFR is a client-centric mortgage field services company that protects your business by protecting your properties. We specialize in property preservation services, REO property management, field inspection, insurable loss inspection, utility management, and property registrations."

**Logan & Gatten Law Offices**
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026
Fax (724) 627-5523

11) This complaint herein is brought against defendants for breaking and entering in form of a trespass upon the Plaintiffs' residence in Cokeburg, Pennsylvania, conspiring with Defendants to break and enter into Plaintiffs' residence without justification, locking out the Plaintiffs for a period of four months without justification, a personal injury that occurred to Plaintiff William T. Goblesky as a result of the trespass and the associated actions that occurred subsequent to the Defendants gross negligence and intentional conduct.

**JURISDITION and VENUE**

12) Jurisdiction and venue are proper in Washington County, Pennsylvania as Plaintiffs' real estate ownership and related to the causes of action are located in and occurred in Cokeburg, Washington County, Pennsylvania.

13) In addition, Defendants' conduct business in Washington County, Pennsylvania and the relevant facts are derived from their Mortgage granted to a neighboring property in Cokeburg and recorded in Washington County, Pennsylvania.

**FACTUAL BACKGROUND**

14) Plaintiffs at all relevant times owned and continue to own the real property located at 152 and 154 Lincoln Street, Cokeburg Borough, Pennsylvania, 15324, Washington County Parcel IDs 200-005-00-03-0007-00 and 200-005-00-03-0008-00.

15) The home situated on the property in question is a duplex.

16) The duplex is a residential dwelling consisting of a single structure designed and constructed for two separate and independent dwelling units, each with its own entrance, kitchen, bathroom, and living facilities.

17) The Plaintiffs acquired the property by deed dated October 6, 2009 from William Goblesky and Dolores Goblesky, and recorded in the Washington County Recorder of Deeds office as

instrument number 200940736 and 200940737. A true and correct copy of the deeds are attached collectively to this complaint as *Exhibit A.*

18) The Plaintiffs, who are siblings, own the property as Joint Tenants with Right of Survivorship

19) The Plaintiffs own the property outright and have no liens or encumbrances on the property.

20) On or around July 17 , 2025, upon information and belief, Defendant NFR trespassed into the Plaintiffs' duplex by breaking and entering into the residence without permission or notice to either Plaintiff.

21) It is not known who the individuals were that were acting on behalf of Defendant NFR that physically broke into the home.

22) Neither Plaintiffs have met any agent or representatives of the Defendants in person.

23) Plaintiffs never received notice of the planned break in by Defendants either by letter, phone call or posting on the property.

24) Only after the break in occurred did Plaintiff William T. Goblesky observe a posting on the property

25) Upon Plaintiff William T. Goblesky's  inability to enter the residence, he discovered a paper notice on his door stating "This property is under the management of National Field Representatives Inc. When it is available for sale, arrangements to inspect the property may be made through a real estate broker of your choice. The property may not be entered until it is offered for sale. National Field Representatives Inc. In case of emergency please contact 1-800-639-2151. ATTN: City Officials. For any Code/Safety concerns please contact NFR at 800-639-2151x2335 or code@nfronline.com." A true and correct copy of the posting is attached to this Complaint as *Exhibit B.*

**Logan & Gatten Law Offices**
54 N. Richhill Street
Waynesburg, PA  15370
(724) 627-6026
Fax (724) 627-5523

26) Another sign posted on the property stated the property was secured and winterized on July 17, 2025 and that on June 20, 2025, NFR found the property to be vacant or abandoned. A true and correct copy of the notices posted on the residence are attached as *Exhibit C.*

27) Upon discovering that the residence was locked and review of these notices, Plaintiff William T. Goblesky called the numbers listed on the notices and discussed the matter with Defendants representatives.

28) Very shortly after this discovery, Defendants admitted they had secured and "winterized" the wrong residence.

29) A third and final document was found on the property stating "ATTENTION. PHH Mortgage believe that this property is vacant and intends to secure a SINGLE door. If you are the borrower or authorized third party maintaining the property and do NOT want the property secured, please call 833-604-0558, within 5 business days. A single door will be secured, property will be winterized, if required, and a thorough inspection of the interior will be done, however, NOTHING WILL BE REMOVED, except spoiled debris. Date:8/9/25. A true and correct copy of this notice posted on the residence is attached as *Exhibit D.*

30) The Exhibit D notice was discovered after Plaintiff William T. Goblesky gained entry to his residence

31) The Exhibit D notice was posted on the property on August 9, 2025, several weeks after Plaintiff had discovered the other notices and had been locked out.

32) The house numbers assigned on Lincoln Street in Cokeburg have been established for over 50 years.

33) However, the house numbers on Lincoln Street in Cokeburg do not match the lot numbers.

34) The Lot numbers for the Goblesky residence are 141 and 143 Lincoln Street.

35) The house numbers that were assigned are located on the outside of the residence and are 152 and 154 as required by the borough and post office.

36) Plaintiffs have tried to address this issue with Cokeburg Borough, but as the numbers are long standing for over fifty years and nothing has been changed.

37) A neighboring property being lots 152 and 154 Lincoln Street, Cokeburg are owned by Janet R. Nuccetelli.

38) Janet R. Nuccetelli's house number is 167 Lincoln Street, Cokeburg.

39) The Washington County Parcel ID number for Janet R. Nuccetelli's residence is 200-005-00-02-0001-00

40) The neighbor, Janet R. Nuccetelli, entered into a Home Equity Conversion Mortgage with Liberty Home Equity Solutions Inc. on November 7, 2013 and was recorded November 20, 2013 in the Washington County Recorder of Deeds as Instrument Number 201334679. A true and correct copy of said Mortgage is attached to this complaint as *Exhibit E.*

41) The Nuccetelli home's legal description on page 13 of the recorded mortgage lists parcel I as 156 Lincoln Street and parcel II as 154 Lincoln Street, though the borrower's address is 167 Lincoln Street.

42) The Nuccetelli home's parcel ID number matches the parcel ID on the Mortgage marked as Exhibit E.

43) Janet R. Nuccetelli entered into another Adjustable Rate Open-End Home Equity Conversion Second Mortgage with the Secretary of Housing and Urban Development on November 20, 2013 at Washington County Instrument number 201334680. A true and correct copy of said Mortgage is attached to this complaint as *Exhibit F.*

44) It is believed that this second mortgage is in connection with Mortgage granted as Exhibit E.

45) The mortgage at Exhibit E was then assigned by Liberty Home Equity Solutions to Wilmington Savings Fund Society by assignment dated August 29, 2025 and recorded September 3, 2025 as instrument number 202517514. A true and correct copy of said assignment is attached to this complaint as *Exhibit G*.

46) The assignment was held in care of PHH Mortgage Corporation d/b/a PHH Mortgage Services.

47) It is not believed that the assignment marked as Exhibit G was entered a result of the incident involving Plaintiffs' home.

48) It is not known why shortly after this incident the Mortgage company created an assignment of the Mortgage.

49) The assignment of the mortgage maintains the property address is 167 Lincoln Street, Cokeburg, Pennsylvania 15324.

50) Upon information and belief, Defendant NFR and Defendant PHH Mortgage mistakenly took the Goblesky residence for the Nuccetelli residence in their attempts to secure and "winterize" the property.

51) The lot numbers on the Nuccetelli residence being 154 and 156 do not correspond exactly with the house numbers on the Goblesky Residence being 152 and 154.

52) Assessment records in Washington County have the Nuccetelli residence property address as being 152 and 154 Lincoln Street.

53) The Goblesky residence had 152 and 154 on the outside of the home as the house numbers, though the assessment records list the Goblesky residence as 141 and 143.

54) Thus, in Defendant's scant research of the properties and alleged visits to the property, they had mistakenly identified the Goblesky Residence as the Nuccetelli residence.

55) Plaintiff William T. Goblesky usually is home at night in the residence four to five times a week.

56) William T. Goblesky works long hours at his business and is never home due to the business or he would be at the residence.

57) The residence was secured by Plaintiffs and was maintained by Plaintiffs.

58) Plaintiffs followed all applicable laws and ordinances required of them by the borough and other authorities regarding the residence.

59) The Goblesky residence did not look visibly abandoned or vacant from the street or outside as it was well maintained by Plaintiffs.

60) On or after July 17, 2025, William T. Goblesky came to the residence as normal and attempted to open the garage door, which was his normal method of entry.

61) The garage door to the residence did not open.

62) Plaintiff had no way of opening the garage

63) Upon exiting his vehicle on the outside of the property, William T. Goblesky found the notices marked as Exhibit B and C.

64) When Mr. Goblesky tried the exterior door, it was locked and his key could not open the door.

65) There was also a lock box with a coded combination on the door that contained the alleged new keys for the property.

66) Defendants caused the residence to be locked and replaced the locks to the entrances to both sides of the duplex.

67) Plaintiff William T. Goblesky inspected the entirety of his residence from the outside and determined he could still access one side of the duplex using a living room door that had not been re-keyed or replaced.

Logan & Gatten Law Offices
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026
Fax (724) 627-5523

68) Plaintiff was able to gain access to the residence on the side known as 141 or 152.

69) Upon his entry, Plaintiff William T. Goblesky discovered the home had been ransacked.

70) Items were strewn and tossed about the residence and Plaintiff at the time did not understand what had happened.

71) It also appeared to Plaintiff William T. Goblesky that some utilities to the home were shut off.

72) Plaintiff William T. Goblesky discovered the water had been turned off to the residence in the basement on the main valve.

73) Plaintiff then left through the door he was able to use and still had a key to and immediately called the numbers provided on the notices.

74) After multiple phone calls, Defendants admitted they had secured the wrong property.

75) Upon request of the Plaintiff William T. Goblesky to provide access to his residence and the other half of the duplex, Defendants denied him the access.

76) Defendants told Plaintiff William T. Goblesky that now they knew they had the wrong house, that they could not send anyone else to his residence in order to reverse changing the locks and providing Plaintiff access to his other locks to the residence.

77) Several phone calls were placed by Plaintiffs to gain access the lock box containing the new keys, but Defendants denied access to Plaintiffs every time.

78) Plaintiffs then employed the undersigned to send a demand letter dated October 1, 2025 to Defendants after having no options left.

79) Defendants eventually did give Plaintiff William T. Goblesky the code to access the building through their counsel but not until November 17, 2025, a full four months after locks were changed by Defendants.

**Logan & Gatten Law Offices**
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026
Fax (724) 627-5523

80) While Plaintiff William T. Goblesky was inside his property on or about July 17, 2025, he was inspecting the property and accidently fell down the steps from the first floor to the basement.

81) The basement lights were not able to be turned on from the first floor of the residence as the switch is only a two way switch for the basement.

82) Plaintiff usually accesses the home from the basement negating the need to have a three way light switch on the basement stairs.

83) Plaintiff William T. Goblesky was making his way to the basement in order to open the garage door and turn on the main water valve to the residence.

84) In the midst of this egregious discovery that someone had broke into his residence, ransacked the residence and turned off his water, Plaintiff William T. Goblesky tripped on the darkened stairs and injured himself due to his inability to see.

85) As a result of subsequent visits to his medical doctor and a visit to the hospital, it was determined that Plaintiff William T. Goblesky as a result of his fall on the steps sustained a tear of the knee meniscus.

86) Plaintiff William T. Goblesky as a result of the fall also sustained a partial tear of the medial collateral ligament (MCL) of the knee.

87) As a result of the fall, Plaintiff William T. Goblesky may have incurred further injuries not yet known to him.

88) Plaintiff William T. Goblesky's injuries have caused and continue to cause pain, limitation of motion, impairment, and may require future medical care, including possible surgical intervention.

89) Plaintiff William T. Goblesky has not scheduled a suggested surgery on his knee or his MCL at the time of this filing, but doctors indicate to him that surgery is needed to repair it and is wholly necessary.

90) Plaintiffs have now regained control of their residence and corrected the changes made by Defendants without recourse or assistance being provided by Defendants.

91) Upon Plaintiff William T. Goblesky's entry into the house several items were affected and damaged by the trespass.

92) The following are a list of items damaged by the Defendants and constitute a non exclusive list that Plaintiff reserves the right to extend if discovered:

   a. The basement door and its lock on the "152" side of the duplex;

   b. The kitchen storm door and regular door and lock on the "154" side of the duplex;

   c. The Garage door, automatic opener and locking mechanism on the door on the "152" side of the duplex;

   d. The window coverings;

   e. The Hot water heater;

   f. The home air conditioning unit;

   g. The family room ceiling inside the "152" side of the duplex;

   h. Utility charges for disconnection of services;

93) Defendants caused several storage boxes to be emptied and dumped on the floor and were damaged.

94) Defendants caused several storage cabinets to be emptied and left open throughout the entire residence.

95) Defendants did not and have not offered to return to the property and correct the mess and destruction they caused inside the Plaintiffs residence.

96) The Hot water heater had been turned off by Defendants.

97) Defendants in fact, refused to come to the property at all once they discovered they had the wrong house.

98) Plaintiffs were deprived of their right to peaceful full and exclusive use of their property for a period of up to four months by the actions of Defendant.

99) Defendants without proper notice, entered into Plaintiff's property and did substantial harm to the property.

100) The main harm caused by Defendant's was their blatant refusal to allow Plaintiffs back into their own property and lack of caring to ameliorate or remediate the situation.

101) Plaintiff William T. Goblesky lost time away from his business in contacting the Defendants to obtain possession of the residence.

102) Plaintiff William T. Goblesky lost time away from his business in having to address his medical needs due to his fall on the steps at the property due to his fall on the basement steps.

103) Plaintiffs lost peace of mind that their property they own will not in the future be broken into and ransacked by unknown individuals or companies.

104) Plaintiffs' community has lost its peacefulness in that Defendants broke into a residence without justifiable cause and without due diligence in identifying the proper residence to secure.

105) Defendants have not tried to ameliorate or mitigate the damages caused to Plaintiffs in any form or manner.

**Logan & Gatten Law Offices**
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026
Fax (724) 627-5523

## COUNT I- TRESPASS

106)  Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

107)  At all relevant times, Defendants or their agents entered and intentionally intruded upon land and or the subject property being 152 and 154 Lincoln Street, Cokeburg, Pennsylvania, without Plaintiffs' permission, consent, license, or legal justification.

108)  At all relevant times before the break in, Plaintiffs were in possession of the subject property.

109)  After the incident alleged previously, Plaintiffs were no longer in full possession of their property and without justification by the Defendants.

110)  In Pennsylvania, Plaintiffs have a cause of action in trespass regardless of any actual injury or damages.

111)  Defendants infringed and harmed Plaintiffs' right to peaceably enjoy full and exclusive use of their property.

112)  Plaintiffs were deprived of the use of the full residence and land for approximately four months without justification.

113)  Defendants' entry onto the Property was intentional, willful, and unauthorized.

114)  Defendants knew or should have known that Plaintiffs did not consent to Defendants' entry upon the Property.

115)  Defendants knew or should have known that "winterizing" the subject property without Plaintiffs' permission or knowledge would cause harm to Plaintiffs.

116)  Defendant remained upon the Property and in possession of the property after permission had been expressly or impliedly denied and/or after Defendants knew or should have known that such entry was unauthorized.

Logan & Gatten Law Offices
54 N. Richhill Street
Waynesburg, PA  15370
(724) 627-6026
Fax (724) 627-5523

117) Defendants unauthorized entry constituted a trespass upon Plaintiff's land under Pennsylvania law.

118) As a direct and proximate result of Defendants' trespass, Plaintiffs suffered damages including, but not limited to:

    a. Interference with Plaintiff's exclusive possession and use of the property;

    b. Costs incurred to secure the property, including changing and/or re-keying locks and time spent in remediating the property;

    c. Damage to real and/or personal property;

    d. Loss of use and enjoyment of the property; and

    e. Other damages as may be proven at trial.

119) Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's property rights, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs, interest, and such other relief as this Honorable Court deems just and proper.

## COUNT II – CIVIL CONSPIRACY

120) Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

121) At all relevant times, Defendants, together with one another and/or with persons known and unknown, formed a combination of two or more persons acting with a common purpose to commit unlawful acts, including the unauthorized entry upon Plaintiff's property, and/or to commit lawful acts by unlawful means and for an unlawful purpose.

122) The object of the conspiracy was to unlawfully enter Plaintiffs' property without permission, interfere with Plaintiffs' possessory rights, and/or commit other acts in connection with the break-in and trespass.

123) In furtherance of the aforesaid common purpose, Defendants committed overt acts, including but not limited to:

    a. Planning, coordinating, and facilitating the unauthorized entry onto Plaintiff's property;

    b. Assisting, encouraging, and aiding one another in gaining access to the premises;

    c. Entering and remaining upon the property without permission, consent, or legal justification;

    d. Causing damage to the premises and/or interfering with Plaintiff's possessory rights; and;

    e. Taking actions intended to conceal their involvement in the unlawful entry.

124) As a direct and proximate result of Defendants' conspiracy and the overt acts taken in pursuance of the common purpose, Plaintiffs suffered actual legal damages, including but not limited to:

    a. Damage to real and personal property;

    b. Costs incurred to secure the property, including changing and/or re-keying locks;

    c. Loss of use and enjoyment of the property;

    d. Loss of time spent at Plaintiff William Goblesky's business

    e. Emotional distress and inconvenience; and

    f. Other damages as may be proven at trial.

125)   Defendants acted willfully, maliciously, and in reckless disregard of Plaintiffs' property rights.

126)   Each Defendant is jointly and severally liable for all acts committed by the other Defendants and co-conspirators in furtherance of the conspiracy.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, costs, interest, and such other relief as this Honorable Court deems just and proper.

## COUNT III – NEGLIGENCE

### PLAINTIFF WILLIAM T. GOBLESKY vs. ALL DEFENDANTS

127)   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

128)   At all relevant times, Defendants owed a duty to Plaintiff William T. Goblesky to exercise reasonable care under the circumstances, including a duty to maintain the premises in a reasonably safe condition and to protect lawful occupants and invitees from dangerous and foreseeable conditions, a failure to conform to the standard required.

129)   Where actual damages have resulted from the trespassing, the Defendant trespasser is liable for personal injuries resulting directly and proximately from the trespass and also injuries that are indirect and consequential.

130)   Plaintiff William T. Goblesky suffered a direct injury from the result of Defendant's trespass into the residence in that he tripped and fell on the steps that were unlit, causing his meniscus to be torn and his mcl to be partially torn in his knee.

131)   At all relevant times, Defendants knew or should have known that the basement stairway constituted a dangerous condition when unlit.

132)    Defendants breached their duty of care by acts and/or omissions, including but not limited to the following:

    a.   Trespassing into the residence;

    b.   Failing to warn Plaintiffs of the dangerous and unlit condition of the stairs;

    c.   Failing to maintain the premises in a reasonably safe condition; and

    d.   Otherwise acting in a careless, reckless, and negligent manner

133)    As a direct and proximate result of Defendants' negligence, Plaintiff William T. Goblesky tripped and fell down the unlit basement stairs.

134)    Defendants' conduct was not merely negligent but demonstrated a reckless indifference to the rights, safety, and welfare of Plaintiffs.

135)    Defendants knew or should have known that trespassing into a residence and ransacking the residence created a high degree of risk of serious bodily injury to occupants of the residence.

136)    Defendants failed to do any due diligence to see if the house was in fact the correct home for Janet Nuccetelli and should have known the Plaintiffs could have been harmed by the reckless disregard for the Plaintiff's home and ownership rights.

137)    Notwithstanding this knowledge, Defendants consciously disregarded that risk by failing to ensure the premises were safe or to warn Plaintiff of the dangerous condition.

138)    Defendants' actions constituted willful, wanton, and reckless misconduct under Pennsylvania law, thereby justifying the imposition of punitive damages to punish such conduct and deter similar misconduct in the future.

139)    Defendants who are Corporations not present or active in the community should be punished for such brazen and wanton acts committed against Plaintiffs.

**Logan & Gatten Law Offices**
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026
Fax (724) 627-5523

140) As a further direct and proximate result of Defendants' negligence, Plaintiff William T. Goblesky sustained serious and painful injuries, including but not limited to:

    a. A meniscal tear of the knee;

    b. A partial tear of the medial collateral ligament (MCL) of the knee; and

    c. Related soft tissue injuries.

141) Plaintiff William T. Goblesky suffered damages including, but not limited to:

    a. Physical pain and suffering;

    b. Mental anguish and emotional distress;

    c. Loss of life's pleasures;

    d. Medical expenses, past and future;

    e. Loss of earnings and impairment of earning capacity at his own business; and

    f. Other damages as may be proven at trial.

142) Plaintiff's injuries are permanent or continuing in nature and may require future medical care, including possible surgical intervention.

143) At all relevant times, Defendants acted through agents, servants, employees, and/or representatives acting within the course and scope of their authority.

WHEREFORE, Plaintiff William T. Goblesky demands judgment against Defendants in an amount in excess of the jurisdictional limits of compulsory arbitration, compensatory damages, punitive damages, together with interest, costs, and such other relief as this Honorable Court deems just and proper.

Respectfully Submitted,

Lukas B. Gatten, Esquire
PA ID No. 325643
Logan & Gatten Law Offices
54 N. Richhill Street
Waynesburg, PA 15370
(724) 627-6026 (T)

## VERIFICATION

I, William T. Goblesky verify that the statements made in this COMPLAINT are true and correct to the best of my knowledge and belief. I understand that false statements are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

DATED: 03/04/26

_____
WILLIAM T. GOBLESKY, Plaintiff

## **VERIFICATION**

I, Joseph M. Goblesky, verify that the statements made in this COMPLAINT are true and correct to the best of my knowledge and belief. I understand that false statements are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

DATED: 2-17-2026

_____
JOSEPH M. GOBLESKY, Plaintiff

EXHIBIT








**Made** the ___ day of _October_ , 2009.

**Between**

> **WILLIAM GOBLESKY and DOLORES GOBLESKY**, his wife, of the Borough of Cokeburg, Washington County, Pennsylvania
>
> *hereinafter called Grantors,*

**And**

> **JOSEPH M. GOBLESKY**, married, of Cokeburg, Pennsylvania
> and
> **WILLIAM T. GOBLESKY**, married of Brick, New Jersey
>
> *hereinafter called Grantees.*

**Witnesseth,** *that the said Grantors in consideration of*

*ONE DOLLAR ($1.00) and NATURAL LOVE and AFFECTION*

*now paid to the Grantors by the Grantees, the receipt of which is hereby acknowledged, do hereby grant and convey unto the said Grantees as Joint Tenants with the Right of Survivorship and not as Tenants in Common,*

**All** that certain tract, piece or parcel of land situate, lying and being in the Borough of Cokeburg, in the County of Washington, in the Commonwealth of Pennsylvania, that is designated as Lot No. 152 in Block B in a Plan of Lots laid out by the Bethlehem-Cuba Iron Mines Company, and recorded in the Office for the recording of deeds in and for said County of Washington, in August, 1945, in Plan Book No. 7 at Pages 144 and 145, said tract, piece or parcel of land having erected thereon a house known and referred to as No. 141 Lincoln Street.

**UNDER AND SUBJECT** to the same exceptions, reservations and conditions as contained in prior deed in the record chain of title.

**BEING** the same parcel of land which Felix Caloccia and Amelia Caloccia, his wife by their Deed dated September 8, 1955 and recorded in the Recorder's Office of Washington County in Deed Book Volume 940, Page 575, granted and conveyed unto William Goblesky and Dolores Goblesky, his wife, Grantors herein.

**PARCEL NO. 200-005-00-03-0008-00**

**THIS CONVEYANCE** is from parents to children and is therefore exempt from any and all realty transfer tax.

*together with the appurtenances.* **To Have and To Hold** *the same unto and for the use of the said Grantees as Joint Tenants with the Right of Survivorship and not as Tenants in Common,*

*And the said Grantors for themselves and their heirs, executors and administrators covenant with the said Grantees and their assigns to warrant and defend Generally the property hereby conveyed against any and all persons lawfully claiming the same.*

NOTICE-THIS DOCUMENT DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND, THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. [This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.]

**Witness** *the hands and seals of the said Grantors*

**Witness**

_Cynthia R Salat_

_as to Both._

_William Goblesky_ (SEAL)
**WILLIAM GOBLESKY**

_Dolores Goblesky_ (SEAL)
**DOLORES GOBLESKY**

**NOTICE** THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, (IS, ARE) FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966.

WITNESS:

_Linda X Mc Cullory_

_Winston Limhangong_

_Joseph M. Goblesky_

_Wid Tah_

_Lorraine Drozd_

**LORRAINE DROZD**
NOTARY PUBLIC OF NEW JERSEY
My Commission Exp. May 22, 2012

**COMMONWEALTH OF PENNSYLVANIA**    )
    ) SS.

**COUNTY OF WASHINGTON**    )

On this, the 6th day of October, 2009, before me a Notary Public, the undersigned officer, personally appeared **WILLIAM GOBLESKY and DOLORES GOBLESKY**, known to me, or satisfactorily proven, to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Cheryl A Seaman*
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Cheryl A. Seaman, Notary Public
Charleroi Boro., Washington County
My Commission Expires March 27, 2012
Member, Pennsylvania Association of Notaries



**Deed**

FROM
WILLIAM GOBLESKY
and
DOLORES GOBLESKY

To
JOSEPH M. GOBLESKY
WILLIAM T. GOBLESKY

Fees, $

SWPA AREA AGENCY ON AGING
LEGAL SERVICES FOR THE ELDERLY
CYNTHIA P. SALAK, ESQUIRE
150 WEST BEAU STREET
SUITE 216 PLAZA BUILDING
WASHINGTON PA 15301
724-228-7080

### Certificate of Residence

I, the undersigned, do hereby certify that Grantees' precise residence is 152 Lincoln Street, Cokeburg, Pennsylvania 15324.

Witness my hand this 6th day of October, 2009.

*Dolores Goblesky*



# This Deed

**Made** the     6th     day of     October     , 2009.

**Between**

> **WILLIAM GOBLESKY and DOLORES GOBLESKY**, his wife, of the Borough of Cokeburg, Washington County, Pennsylvania

> *hereinafter called Grantors,*

**And**

> **JOSEPH M. GOBLESKY,** married, of Cokeburg, Pennsylvania
> **and**
> **WILLIAM T. GOBLESKY,** married of Brick, New Jersey

> *hereinafter called Grantees.*

**Witnesseth,** *that the said Grantors in consideration of*

*ONE DOLLAR ($1.00) and NATURAL LOVE and AFFECTION*

*now paid to the Grantors by the Grantees, the receipt of which is hereby acknowledged, do hereby grant and convey unto the said Grantees as Joint Tenants with the Right of Survivorship and not as Tenants in Common,*

**All** that certain tract, piece or parcel of land situate, lying and being in the Borough of Cokeburg, in the County of Washington, in the Commonwealth of Pennsylvania, that is designated as Lot No. 154 in Block B in a Plan of Lots laid out by the BETHELEHEM-CUBA IRON MINES COMPANY, and recorded in the Office for the Recording of Deeds in and for said County of Washington, in August, 1945, in Plan Book No. 7 at Pages 144 and 145, said tract, piece or parcel of land having erected thereon a house known and referred to as No. 143 Lincoln Street.

**TOGETHER WITH** the improvements thereon and the appurtenances thereto, excepting, however, all water, gas, electric, telephone and sewer lines and facilities not owned by the grantors.

**SUBJECT, HOWEVER,** to all exceptions, reservations, waivers, conditions, restrictions, rights, easements, etc., as the same more fully and at large appear in the Deed from Bethlehem-Cuba Iron Mines Company to Alfonso Flex, et ux., dated October 1, 1945, and recorded in Deed Book 696, Page 525.

**BEING** the same parcel of land which Jeffrey M. Ladisic and Jean M. Ladisic, his wife by their Deed dated October 15, 1984 and recorded in the Recorder's Office of Washington County in Deed Book Volume 2169, Page 62, granted and conveyed unto William Goblesky and Dolores Goblesky, his wife, Grantors herein.

**PARCEL NO. 200-005-00-03-0007-00**

**THIS CONVEYANCE** is from parents to children and is therefore exempt from any and all realty transfer tax.

*together with the appurtenances.* **To Have and To Hold** *the same unto and for the use of the said Grantees as Joint Tenants with the Right of Survivorship and not as Tenants in Common,*

*And the said Grantors for themselves and their heirs, executors and administrators covenant with the said Grantees and their assigns to warrant and defend Generally the property hereby conveyed against any and all persons lawfully claiming the same.*

NOTICE-THIS DOCUMENT DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND, THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. [This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended, and is not intended as notice of unrecorded instruments, if any.]

**Witness** *the hands and seals of the said Grantors*

**Witness**

_Cynthia P Sulak_

_as to both_                                        _William Goblesky_ (SEAL)
                                                    **WILLIAM GOBLESKY**

                                                    _Dolores Goblesky_ (SEAL)
                                                    **DOLORES GOBLESKY**

**NOTICE**  THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, (IS, ARE) FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL.  THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966.

WITNESS:

_[signature]_                                _Joseph M. Goblesky_
_Winston Limbangong_

_Lorraine Drozd_

**LORRAINE DROZD**
NOTARY PUBLIC OF NEW JERSEY
My Commission Exp. May 22, 2012

**COMMONWEALTH OF PENNSYLVANIA**       )

      ) SS.

**COUNTY OF WASHINGTON**       )

On this, the 6*th* day of *October* , 2009, before me a Notary Public, the undersigned officer, personally appeared **WILLIAM GOBLESKY and DOLORES GOBLESKY**, known to me, or satisfactorily proven, to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

*IN WITNESS WHEREOF, I hereunto set my hand and official seal.*

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Cheryl A. Seaman, Notary Public
Charleroi Boro., Washington County
My Commission Expires March 27, 2012
Member, Pennsylvania Association of Notaries

**Deed**

FROM

**WILLIAM GOBLESKY and DOLORES GOBLESKY**

To

**JOSEPH M. GOBLESKY WILLIAM T. GOBLESKY**

Fees, $

SWPA AREA AGENCY ON AGING
LEGAL SERVICES FOR THE ELDERLY
CYNTHIA P. SALAK, ESQUIRE
150 WEST BEAU STREET
SUITE 216 PLAZA BUILDING
WASHINGTON PA 15301
724-228-7080

## Certificate of Residence

I, the undersigned, do hereby certify that Grantees' precise residence is 152 Lincoln Street, Cokeburg, Pennsylvania 15324.

Witness my hand this 6*th* day of *October* , 2009.

EXHIBIT B

*This property is under the management of* **National Field Representatives, Inc**. *When it is available for sale, arrangements to inspect the property may be made through a real estate broker of your choice. The property may not be entered until it is offered for sale.*

**National Field Representatives, Inc.**

*In case of emergency please contact 1-800-639-2151*

**ATTN:** City Officials

For any Code/Safety concerns please contact NFR at 800-639-2151 x 2335 or code@nfronline.com

IMG1217

# EXHIBIT C





## PHH Mortgage believes that this property is vacant and intends to secure a SINGLE door.

If you are the borrower or authorized third party maintaining the property and do NOT want the property secured, please call **833-604-0558**, within **5** business days.

A **single** door will be secured, property will be winterized, if required, and a thorough inspection of the interior will be done, however,

### NOTHING WILL BE REMOVED, except spoiled debris.

Again, if you are the borrower or authorized third party maintaining the property and do NOT want the property secured, please call **833-604-0558**, within **5** business days.

Date: _8/9/25_

**RMS FTV 10/2024**

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
200-005-00-02-000100    COKEBURG BORO
LCGIS REGISTRY 11/20/2013 BY JVH

After Recording Return To:
Liberty Home Equity Solutions, Inc.
10951 White Rock Road, Suite 200
Rancho Cordova, CA 95670

Prepared By: Andrea Driver
Liberty Home Equity Solutions, Inc.
10951 White Rock Road, Suite 200
Rancho Cordova, CA 95670

DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania

INSTRUMENT NUMBER
201334679
RECORDED ON
Nov 20, 2013
9:53:20 AM
Total Pages: 13

RECORDING FEES          $81.50
TOTAL PAID              $81.50

---

Space Above This Line For Recording Data

Commonwealth of Pennsylvania
Parcel ID Number: 200-005-00-02-0001 AND
~~200-007-00-04-0001-00~~
2301-85519
1 of 2

FHA Case Number: 442-3873581/952-255
Loan Number: 3000049796

MIN: 1007992-3000049796-2

## ADJUSTABLE RATE OPEN-END
## HOME EQUITY CONVERSION MORTGAGE
### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **November 07, 2013** ("Date"). The mortgagor is: **JANET R. NUCCETELLI , SINGLE** whose address is: **167 Lincoln St, Cokeburg, PA 15324** ("Borrower"). **The mortgagee under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ('MERS').** MERS is a separate corporation that is acting solely as nominee for Lender, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 1901 E. Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. This Security Instrument is given to: **Liberty Home Equity Solutions, Inc.** which is organized and existing under the laws of **THE STATE OF CALIFORNIA**, and whose address is **10951 White Rock Road, Suite 200, Rancho Cordova, CA 95670** ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **SIXTY FIVE THOUSAND TWO HUNDRED FIFTY AND NO/100** (U.S. **$65,250.00**); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise

3000049796GEN302B

Finale Document Services © 0239 08/08

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(1 of 12)

EXHIBIT
E

due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Washington** County, Pennsylvania:

**Legal description attached hereto as Exhibit A and by this reference made a part hereof.**

which has the address of: **167 Lincoln St, Cokeburg, PA 15324** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2.  **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to,



Finale Document Services © 0239 08/08

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(2 of 12)

Inst. # 201334679 - Page 3 of 13

Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

    Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

    If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender or MERS may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property,



3 0 0 0 0 4 9 7 9 6 G E N 3 0 2 B
Finale Document Services © 0239 08/08

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(3 of 12)

including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.  **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

    (a)  **Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

        (i)   A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property).

    (b)  **Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

        (i)   The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

3 0 0 0 0 4 9 7 9 6 G E N 3 0 2 B
Finale Document Services © 0239 08/08

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(4 of 12)

     (ii)    For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

     (iii)   An obligation of the Borrower under this Security Instrument is not performed.

 (c)  **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur.

 (d)  **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

     (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

     (ii)   Pay the balance in full; or

     (iii)   Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

     (iv)   Provide the Lender with a deed-in-lieu of foreclosure.

 (e)  **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests In the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

 (f)  **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.   **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11.   **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate

payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12.   Lien Status.

(a)   **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b)   **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c)   **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one more of the actions set forth above within 10 days of the giving of notice.

13.   Relationship to Second Security Instrument.

3 0 0 0 4 9 7 9 6 G E N 3 0 2 B
Finale Document Services © 0239 08/08

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(6 of 12)

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i)    This Security Instrument is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

    (ii)    Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any

notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

21. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over

any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made., regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22.    **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **2.294%** which accrues on the principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published on the first business day of each week in the "Money Rates" section of *The Wall Street Journal*("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **January, 2014,** and on [ ] that day of each succeeding year **[X]** the first day of each succeeding month ("Change Date") until the loan is paid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the ("Calculated Interest Rate") for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date ("the Existing Interest Rate").

[ ] **Annually Adjusting Variable Rate Feature** The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

[X] **Monthly Adjusting Variable Rate Feature** The Calculated Interest Rate will never increase above **TWELVE AND 294/1000** Percent (**12.294 %**)

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23.    **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.    **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or

defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25.  **Reinstatement Period.** Borrower's time to reinstate provided in Paragraphs 9 and 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26.  **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

27.  **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ]  Condominium Rider                   [ ]  Planned Unit Development Rider
[ ]  Shared Appreciation Rider           [ ]  Other [Specify]

28.  **Nominee Capacity of MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage. Subject to the foregoing, all references herein to "Mortgagee" shall include Lender and its successors and assigns.



Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(10 of 12)

Notice to borrower: this document contains provisions for a variable interest rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_(signature)_    (Seal)

Borrower - JANET R. NUCCETELLI

_____ Space Below This Line for Acknowledgement _____

COMMONWEALTH OF PENNSYLVANIA, _WASHINGTON_ County ss:

On this, the _07th_ day of _NOVEMBER_, 20 _13_, before me, the undersigned officer,

personally appeared _JANET R NUCCETELLI_

satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written instrument and acknowledged that he/she/they executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires:_10/02/2015_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia J. Larson, Notary Public
Luzerne Twp., Fayette County
My Commission Expires Oct. 2, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Patricia J Larson_
Signature of Notary

_NOTARY PUBLIC_
Title of Officer

3 0 0 0 0 4 9 7 9 6 G E N 3 0 2 B
Finale Document Services © 0239 08/08

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(11 of 12)

## CERTIFICATE OF RESIDENCE

I, _Wendy Cooper_

Agent of Lender

do hereby certify that the precise address of the within-named lender is:

**Liberty Home Equity Solutions, Inc.**
**10951 White Rock Road, Suite 200**
**Rancho Cordova, CA 95670**

Witness my hand this _11_ day of _November 2013_ .

_Wendy Cooper_

Signature of Agent of Lender

Finale Document Services © 0239 08/08

3 0 0 0 0 4 9 7 9 6 G E N 3 0 2 B

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(12 of 12)

Order No.    2301-85519

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF PENNSYLVANIA, COUNTY OF WASHINGTON, AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF COKEBURG, IN THE COUNTY OF WASHINGTON, IN THE COMMONWEALTH OF PENNSYLVANIA, THAT IS DESIGNATED AS LOT NO. 167 IN BLOCK B IN A PLAN OF LOTS LAID OUT BY THE GRANTOR AND RECORDED IN THE OFFICE FOR THE RECORDING OF DEEDS IN AND FOR SAID COUNTY OF WASHINGTON IN AUGUST 1945, IN PLAN BOOK NO. 7 AT PAGE 145, SAID TRACT, PIECE OR PARCEL OF LAND HAVING ERECTED THEREON A HOUSE KNOWN AND REFERRED TO AS NO. 156 LINCOLN STREET.

PARCEL II:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND, SITUATE LYING AND BEING IN THE BOROUGH OF COKEBURG, IN THE COUNTY OF WASHINGTON, IN THE COMMONWEALTH OF PENNSYLVANIA, THAT IS DESIGNATED AS LOT 165, IN BLOCK B, IN A PLAN OF LOTS LAID OUT BY THE BETHLEHEM-CUBA IRON MINES COMPANY, A WEST VIRGINIA CORPORATION AND RECORDED IN THE OFFICE FOR THE RECORDER OF DEEDS IN AND FOR SAID COUNTY OF WASHINGTON IN AUGUST, 1945, IN PLAN BOOK NO. 7 AT PAGE 145, SAID TRACT, PIECE OR PARCEL OF LAND HAVING ERECTED THEREON A HOUSE KNOWN AND REFERRED TO AS NO. 154 LINCOLN STREET.

PARCEL NUMBER(S): 200-005-00-02-0001-00

Inst. # 201334680 - Page 1 of 11

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
200-005-00-02-000100     COKEBURG BORO
LCGIS REGISTRY 11/20/2013 BY JVH

After Recording Return To:
Liberty Home Equity Solutions, Inc.
10951 White Rock Road, Suite 200
Rancho Cordova, CA 95670

DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania

INSTRUMENT NUMBER
201334680
RECORDED ON
Nov 20, 2013
9:53:21 AM
Total Pages: 11

RECORDING FEES          $77.50
TOTAL PAID              $77.50

Prepared By: Andrea Driver
Liberty Home Equity Solutions, Inc.
10951 White Rock Road, Suite 200
Rancho Cordova, CA 95670

Space Above This Line For Recording Data

Commonwealth of Pennsylvania
Parcel ID Number: 200-005-00-02-0001 AND
~~200-007-00-04-0001-00~~
2301-85519
2 of 2

FHA Case Number: 442-3873581/952-255
Loan Number: 3000049796

MIN: 1007992-3000049796-2

## ADJUSTABLE RATE OPEN-END
## HOME EQUITY CONVERSION SECOND MORTGAGE
### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on **November 07, 2013** ("Date"). The mortgagor is **JANET R. NUCCETELLI , SINGLE** whose address is **167 Lincoln St, Cokeburg, PA 15324** ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Second Note, up to a maximum principal amount of **SIXTY FIVE THOUSAND TWO HUNDRED FIFTY AND NO/100 (U.S. $65,250.00)**; (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **Washington** County, Pennsylvania:

**Legal description attached hereto as Exhibit A and by this reference made a part hereof.**

```
3000049796GEN303R
```
Finale Document Services © - 0290 (08/08)     (1 of 10)     Pennsylvania Second Mortgage - HECM ADJUSTABLE RATE OPEN-END.

EXHIBIT
F

which has the address of: **167 Lincoln St, Cokeburg, PA 15324** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

2.  **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

3.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally



entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

    Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

    If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

    To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.  **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is

in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

9. **Grounds for Acceleration of Debt.**

   (a) **Due and Payable.** Lender may require payment-in-full of all sums secured by this Security Instrument if:

      (I)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

      (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property); or

      (iii)  The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

      (iv)   For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

      (v)    An obligation of the Borrower under this Security Instrument is not performed.

   (b) **Notice to Lender.** Borrower shall notify the Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

   (c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

      (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)     Pay the balance in full; or

(iii)     Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv)     Provide the Lender with a deed-in-lieu of foreclosure.

**(d)**     **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10.**     **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11.**     **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12.**     **Lien Status.**

    **(a)**     **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.



3 0 0 0 0 4 9 7 9 6 G E N 3 0 3 R

Finale Document Services © - 0290 (08/08)     (5 of 10)     Pennsylvania Second Mortgage - HECM ADJUSTABLE RATE OPEN-END

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to

3000049796GEN303R

enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e)    **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14.    **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.    **Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16.    **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.    **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18.    **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19.    **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not a assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

21.  **Lien Priority.** The full amount secured by this Security Instrument shall have lien priority subordinate only to the full amount secured by the First Security Instrument.

22.  **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **2.294%** which accrues on the principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published on the first business day of each week in the "Money Rates" section of *The Wall Street Journal*("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **January, 2014,** and on **[ ]** that day of each succeeding year **[X]** the first day of each succeeding month ("Change Date") until the loan is paid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the ("Calculated Interest Rate") for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date ("the Existing Interest Rate").

**[ ] Annually Adjusting Variable Rate Feature** The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

**[X] Monthly Adjusting Variable Rate Feature** The Calculated Interest Rate will never increase above **TWELVE AND 294/1000** Percent (**12.294 %**)



3 0 0 0 0 4 9 7 9 6 G E N 3 0 3 R

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider                     [ ] Planned Unit Development Rider
[ ] Shared Appreciation Rider             [ ] Other [Specify]

**Notice to borrower: this document contains provisions for a variable interest rate.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
Borrower - JANET R. NUCCETELLI

Inst. # 201334680 - Page 10 of 11

Space Below This Line for Acknowledgement

COMMONWEALTH OF PENNSYLVANIA, _WASHINGTON_ County ss:

On this, the _07_ day of _NOVEMBER_, 20 _13_, before me, the undersigned officer,

personally appeared _JANET R. NUCCETELLI_

satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written instrument and acknowledged that he/she/they executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires: _10/02/2015_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia J. Larson, Notary Public
Luzerne Twp., Fayette County
My Commission Expires Oct. 2, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Patricia J. Larson_
Signature of Notary

_NOTARY PUBLIC_
Title of Officer

**CERTIFICATE OF RESIDENCE**

I, _Wendy Cooper_
Agent of Lender

do hereby certify that the precise address of the within-named lender is:

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
**451 SEVENTH STREET, S.W.**
**WASHINGTON, DC 20410**

Witness my hand this _11_ day of _November 2013_.

_Wendy Cooper_
Signature of Agent of Lender

3 0 0 0 0 4 9 7 9 6 G E N 3 0 3 R
Finale Document Services © - 0280 (08/08)    (10 of 10)    Pennsylvania Second Mortgage - HECM ADJUSTABLE RATE OPEN-END

SEAL

Order No.    2301-85519

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF PENNSYLVANIA, COUNTY OF WASHINGTON, AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF COKEBURG, IN THE COUNTY OF WASHINGTON, IN THE COMMONWEALTH OF PENNSYLVANIA, THAT IS DESIGNATED AS LOT NO. 167 IN BLOCK B IN A PLAN OF LOTS LAID OUT BY THE GRANTOR AND RECORDED IN THE OFFICE FOR THE RECORDING OF DEEDS IN AND FOR SAID COUNTY OF WASHINGTON IN AUGUST 1945, IN PLAN BOOK NO. 7 AT PAGE 145, SAID TRACT, PIECE OR PARCEL OF LAND HAVING ERECTED THEREON A HOUSE KNOWN AND REFERRED TO AS NO. 156 LINCOLN STREET.

PARCEL II:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND, SITUATE LYING AND BEING IN THE BOROUGH OF COKEBURG, IN THE COUNTY OF WASHINGTON, IN THE COMMONWEALTH OF PENNSYLVANIA, THAT IS DESIGNATED AS LOT 165, IN BLOCK B, IN A PLAN OF LOTS LAID OUT BY THE BETHLEHEM-CUBA IRON MINES COMPANY, A WEST VIRGINIA CORPORATION AND RECORDED IN THE OFFICE FOR THE RECORDER OF DEEDS IN AND FOR SAID COUNTY OF WASHINGTON IN AUGUST, 1945, IN PLAN BOOK NO. 7 AT PAGE 145, SAID TRACT, PIECE OR PARCEL OF LAND HAVING ERECTED THEREON A HOUSE KNOWN AND REFERRED TO AS NO. 154 LINCOLN STREET.

PARCEL NUMBER(S): 200-005-00-02-0001-00

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
200-005-00-02-000100    COKEBURG BORO
LCGIS REGISTRY 09/03/2025 BY JU

Inst. # 202517514 - Page 1 of 3

CARRIE PERRELL
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania

INSTRUMENT NUMBER
202517514
RECORDED ON
Sep 03, 2025
12:10:38 PM
Total Pages: 3

## ASSIGNMENT OF MORTGAGE

| RECORDING FEES | $70.25 |
| TOTAL PAID | $70.25 |

**Prepared By And**
**After Recording Return To:**

 **DocSolutionUSA**

DocSolutionUSA, LLC, dba DocSolution, Inc.
2316 Southmore
Pasadena, TX 77502
713-941-4928
DocSolutionUSA, LLC, d/b/a DocSolution, Inc., did not prepare a title search of the Property described in the document below. The Preparer of this document makes no representation as to the status and validity of, including, but not limited to, the title, loan history, boundary survey, property use, or zoning regulations of the Property assigned, transferred, conveyed, released, or any other disposition of the Property. Information herein was provided to the Preparer by Grantor/Grantee and/or their Agent and prepared according to their request.
Client Id: RMS/FCAOL
Loan #: 231721-ER

Min: 1007992-3000049796-2    MERS Phone: 1-888-679-6377
FHA Case Number: 442-3873581

*FOR VALUE RECEIVED*, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE,** whose address is P.O. Box 2026, Flint, MI 48501-2026; 11819 Miami St., Suite 100, Omaha, NE 68164, **AS NOMINEE FOR LIBERTY HOME EQUITY SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS,** does hereby assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY IN ITS CAPACITY AS OWNER TRUSTEE FOR OCWEN LOAN ACQUISITION TRUST 2023-HB1,** forever and without recourse, whose address is c/o PHH Mortgage Corporation d/b/a PHH Mortgage Services, 1661 Worthington Rd, Ste#100, West Palm Beach, Florida 33409, all its right, title and interest in and to a certain Mortgage from **JANET R. NUCCETELLI, SINGLE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE AS NOMINEE FOR LIBERTY HOME EQUITY SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS** for $65,250.00, dated 11/7/2013 of record on 11/20/2013 as Document **201334679,** in the **WASHINGTON** County Clerk's Office, State of **PENNSYLVANIA.**
Property Address: 167 Lincoln St.q, Cokeburg, PENNSYLVANIA 15324
Legal description: SEE ATTACHED EXHIBIT "A"
Parcel: 200-005-00-02-0001-00
Township: BOROUGH OF COKEBURG
I certify that the address of the within named assignee is c/o PHH Mortgage Corporation d/b/a PHH Mortgage Services, 1661 Worthington Rd, Ste#100, West Palm Beach, Florida 33409

**CYNDHYA CUADRA**                              Page 1

EXHIBIT

G

Executed this *Aug 29, 2025*

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE AS NOMINEE FOR LIBERTY HOME EQUITY SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS**

By:   LISA MARIE KING
Title:  VICE PRESIDENT

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned, a Notary Public on this day personally appeared LISA MARIE KING, VICE PRESIDENT known to me (or proved to me on the oath of _____ ), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR LIBERTY HOME EQUITY SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS a corporation, and that he/she had voluntarily executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this __29__ day of __Aug__ , A.D. __2025__

Notary Public in and for the State of Texas
Notary's Printed Name: __LaTara Dever__
My Commission Expires: __9.8.2027__
Mortgage for $65,250.00  dated 11/7/2013

*1 6 4 6 0 2 2*

LaTara Dever
Notary ID # 134547374
My Commission Expires
09-08-2027

## EXHIBIT "A"

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF PENNSYLVANIA, COUNTY OF WASHINGTON, AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF COKEBURG, IN THE COUNTY OF WASHINGTON, IN THE COMMONWEALTH OF PENNSYLVANIA, THAT IS DESIGNATED AS LOT NO. 167 IN BLOCK B IN A PLAN OF LOTS LAID OUT BY THE GRANTOR AND RECORDED IN THE OFFICE FOR THE RECORDING OF DEEDS IN AND FOR SAID COUNTY OF WASHINGTON IN AUGUST 1945, IN PLAN BOOK NO. 7 AT PAGE 145, SAID TRACT, PIECE OR PARCEL OF LAND HAVING ERECTED THEREON A HOUSE KNOWN AND REFERRED TO AS NO. 156 LINCOLN STREET.

PARCEL II:

ALL THAT CERTAIN TRACT, PIECE OR PARCEL OF LAND, SITUATE LYING AND BEING IN THE BOROUGH OF COKEBURG, IN THE COUNTY OF WASHINGTON, IN THE COMMONWEALTH OF PENNSYLVANIA, THAT IS DESIGNATED AS LOT 165, IN BLOCK B, IN A PLAN OF LOTS LAID OUT BY THE BETHLEHEM-CUBA IRON MINES COMPANY, A WEST VIRGINIA CORPORATION AND RECORDED IN THE OFFICE FOR THE RECORDER OF DEEDS IN AND FOR SAID COUNTY OF WASHINGTON IN AUGUST, 1945, IN PLAN BOOK NO. 7 AT PAGE 145, SAID TRACT, PIECE OR PARCEL OF LAND HAVING ERECTED THEREON A HOUSE KNOWN AND REFERRED TO AS NO. 154 LINCOLN STREET.

PARCEL NUMBER(S): 200-005-00-02-0001-00